[Civ. No. 44975. First Dist., Div. Four. July 16, 1980.]

LISA JAMISON, Plaintiff and Appellant, v.
STUART LINDSAY et al., Defendants and Respondents.

LISA JAMISON, Plaintiff and Appellant, v.
CHARLES HANFORD, Defendant and Respondent.

COUNSEL

Raymond E. Bright for Plaintiff and Appellant.

Ropers, Majeski, Kohn, Bentley & Wagner, Michael J. Brady, Wines, Robinson, Wood & Anderson, Wines, Robinson & Wood and Jesse F. Ruiz for Defendants and Respondents.

OPINION

**CHRISTIAN, J.**—Lisa Jamison sued Drs. Stuart Lindsay and Charles Hanford for medical malpractice. Trial by jury resulted in a special verdict determining that neither Lindsay nor Hanford had been negligent. The court rendered judgment on the verdict, and the present appeal ensued.

Appellant consulted respondent Hanford, an obstetrician and gynecologist, for examination of a pelvic mass. Dr. Hanford examined appellant, then aged 16, and determined that she probably had a tumor in her right ovary. A few days later he performed surgery. He removed appellant's right ovary and a large cystic mass, and sent the growth to the hospital's pathology department. Appellant Lindsay, the chief pathologist, shortly informed Dr. Hanford by intercom that the mass was a benign teratoma.

Dr. Lindsay had seen that the teratoma contained both mature and immature tissue ("tissue that looks like the normal tissue of a fetus"). He knew that for many years there had been divergent opinions among pathologists as to whether immature tissue in a teratoma is potentially malignant. Dr. Lindsay believed that such tissue is not malignant; he did not tell Dr. Hanford that the teratoma contained some immature tissue or that some other pathologists viewed such immature tissue as malignant or potentially malignant. He did not include this information in his written pathology report. Dr. Hanford was thus not aware that appellant's teratoma contained immature tissue. He was also unaware some pathologists believed such tissue to be malignant or potentially malignant. After the surgery Dr. Hanford told appellant that the tumor was benign.

Several months after the surgery, appellant began to feel something unusual in her abdomen, and began to have painful sensations in her back, hip, and right thigh. She consulted Dr. Hanford, who examined her but found nothing suspicious.

Some weeks later appellant visited a chiropractor, complaining of low back pain. The chiropractor noticed an elevation in appellant's lower abdomen, and recommended that appellant consult a physician. Appellant returned to Dr. Hanford's office; he was on vacation, so an examination was done by Dr. John Crouse, who had assisted Dr. Hanford in the 1973 surgery. Dr. Crouse examined appellant's abdomen and found an enlargement which seemed to be a tumor. X rays revealed a nine-centimeter retroperitoneal tumor adjacent to the right side of appellant's spinal column. Three pulmonary lesions were also found. Dr. Crouse concluded that the tumor was a recurrence of appellant's ovarian teratoma, which probably had been malignant. At trial, Dr. Lindsay and a defense expert testified to the contrary: in their opinion the retroperitoneal tumor had not metastasized from the ovarian teratoma and the two growths were unrelated.

Appellant was referred to a pediatric oncologist, Dr. Jordan Wilbur, who prescribed chemotherapy and radiation therapy. The treatment did not cause the tumor to disappear. Dr. Wilbur testified that chemotherapy given shortly after the 1973 surgery would probably have prevented the development of the retroperitoneal tumor.

Most of the retroperitoneal tumor was surgically removed, but a small portion of the tumor could not be removed. The surgery required removal of a portion of appellant's aorta and permanent severance of her vena cava. Extensive and dangerous repairs of circulatory vessels were required.

One of appellant's trial theories was that when respondents failed, after the surgery, to tell her that her ovarian teratoma contained immature tissue and that some pathologists believed that such tissue was malignant or potentially malignant, there was "a lack of informed consent." Appellant requested jury instructions on the theory of informed consent; the court refused the instructions, stating that respondents' conduct was to be evaluated under the standards ordinarily applied to allegations of medical negligence. Appellant contends that it was error for the court to foreclose her pursuit of the informed consent theory.

■ When surgery or other dangerous therapeutic procedures are being considered, the therapist must inform the patient of the available alternatives and the hazards involved so that the patient is able to give effective consent to the proposed treatment. "[A]s an integral part of the physician's overall obligation to the patient there is a duty of reasonable disclosure of the available choices with respect to proposed therapy and of the dangers inherently and potentially involved in each." (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 243 [104 Cal.Rptr. 505, 502 P.2d 1].)

In a recent decision, *Truman* v. *Thomas* (1980) 27 Cal.3d 285 [165 Cal.Rptr. 308, 611 P.2d 902], the Supreme Court held that the physician also must inform the patient of the risks involved in refusal to undergo proposed diagnostic tests. The respondent physician had recommended to the appellant's mother that she submit to a pap smear test, but there was evidence that the patient refused to undergo the test and that respondent did not inform her of its purpose or of the risks involved in her refusal to submit to it. (*Id.*, at pp. 293, 294.) The patient subsequently died of cervical cancer. The court cited *Cobbs* v. *Grant, supra*, and said, "If a patient indicates that he or she is going to *decline* [a] risk-free test or treatment, then the doctor has the additional duty of advising of all material risks of which a reasonable person would want to be informed before deciding not to undergo the procedure." (*Id.*, at p. 292; italics in original.) The trial court erred when it refused to instruct the jury that it "'is the duty of a physician to disclose to his patient all relevant information to enable the patient to make an informed decision regarding the submission to or refusal to take a diagnostic test. . . .'" (*Id.*, at p. 290.)

■ In the present case, unlike in *Truman* v. *Thomas* or *Cobbs* v. *Grant*, no treatment or tests had been proposed by respondents. The informed consent theory and appellant's proposed instructions on the duty of a physician to disclose "all relevant information to enable the patient to make an informed decision regarding the proposed. . .postoperative treatment" were inapposite to respondents' failure to tell her that her ovarian teratoma contained immature tissue and that some pathologists believed such tissue to be malignant or potentially malignant. Appellant had validly consented to the surgery before anyone knew anything about the characteristics of the suspected tumor. After the surgery, respondents did not propose any therapy as to which appellant would have been entitled to make an informed decision. The instructions proposed

by appellant, though stating the law correctly (as indicated by *Cobbs* and *Truman*), were not applicable to the evidence presented. Consistent with the broad duty of disclosure suggested by *Truman*, an appropriate instruction would have been, "it is the duty of a physician or surgeon to disclose to the patient all relevant information to enable the patient to make an informed decision whether to seek additional treatment following surgery." (Cf. *Truman v. Thomas, supra*, 27 Cal.3d at p. 290.) But appellant did not request such instruction, and the court had no duty to modify or edit the proposed instructions so that they would be appropriate to the evidence presented. (See, e.g., *Ernest W. Hahn, Inc. v. Sunshield Insulation Co.* (1977) 68 Cal.App.3d 1018, 1024 [137 Cal.Rptr. 732]; see also *Truman v. Thomas, supra*, 27 Cal.3d at pp. 301-302 [Clark, J., dis.] [and cases cited therein].)

Appellant was not without an appropriate legal theory under which she might recover damages. Negligent failure to advise a patient to pursue a potentially necessary course of treatment is actionable under ordinary medical negligence standards, on which the jury was instructed. Appellant would have been entitled to recover damages if the jury found that respondents were negligent in failing to tell appellant that her ovarian teratoma contained immature tissue and that some pathologists believed such tissue to be malignant or potentially malignant. (Cf. *Truman v. Thomas, supra*, 27 Cal.3d at pp. 291-292.) But the jury found that there was no negligence by the surgeon or the pathologist; this finding is supported by substantial evidence and must be upheld.

Appellant contends that, in analyzing respondents' challenged nondisclosure pursuant to an informed consent theory, the jury should not have been bound by expert testimony as to whether competent members of the medical profession would have informed appellant that her teratoma contained immature tissue and that some pathologists believe such tissue to be malignant or potentially malignant. Although informed consent is not properly in issue here, brief discussion is appropriate on the question whether the duty of disclosure pursuant to ordinary professional negligence standards was to depend on expert testimony.

 In the analogous case of *Cobbs v. Grant*, the court said that "'. . . to bind the disclosure obligation to medical usage is to arrogate

the decision on revelation [of risks] to the physician alone. Respect for the patient's rights of self-determination on particular therapy demands a standard set by law for physicians rather than one which physicians may or may not impose upon themselves.'" (8 Cal.3d at p. 243, quoting *Canterbury* v. *Spence* (D.C.Cir. 1972) 464 F.2d 772, 784, cert. den. 409 U.S. 1064 [34 L.Ed.2d 518, 93 S.Ct. 560].) "[W]hen a given procedure inherently involves a known risk of death or serious bodily harm, a medical doctor has a duty to disclose to his patient the potential of death or serious harm, and to explain in lay terms the complications that might possibly occur. Beyond the foregoing minimal disclosure, a doctor must also reveal to his patient such additional information as a skilled practitioner of good standing would provide under similar circumstances." (8 Cal.3d at pp. 244-245.) Whether such additional information should be revealed is properly a matter for expert testimony. (*Morgenroth* v. *Pacific Medical Center, Inc.* (1976) 54 Cal.App.3d 521, 534-535 [126 Cal.Rptr. 681].)

The question whether a physician rendering a diagnosis has a duty to inform the patient of the fact that other members of the medical profession might render a different diagnosis based on adherence to a contrary, recognized school of thought is within the scope of the type of "minimal disclosure" described in *Cobbs* v. *Grant*, and requires no expert testimony. Disclosure of such information by the physician "does not bring his medical knowledge and skills peculiarly into play." (*Canterbury* v. *Spence, supra*, 464 F.2d at p. 785.) Here the court did not instruct the jury that it was to analyze the challenged nondisclosure (within the context of ordinary professional negligence law) pursuant to the standard suggested in *Cobbs*. Instead, the court instructed the jury simply that it was to determine the standard of care pursuant to expert testimony. (See BAJI No. 6.30.) However, appellant herself requested that this instruction be given. Any error was thus invited, and cannot be asserted on appeal. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 267, at p. 4258.)

■ Appellant contends that the court erred when it instructed the jury on the absence of negligence where a physician selects among alternative, recognized methods of diagnosis. The court gave BAJI No. 6.03, which provides: "Where there is more than one recognized method of diagnosis or treatment, and no one of them is used exclusively and uniformly by all practitioners of good standing, a physician and surgeon is not negligent if, in exercising his best judgment, he selects one of the

approved methods, which later turns out to be a wrong selection, or one not favored by certain other practitioners."

Appellant argues that this instruction should not have been given because the pathologist, Dr. Lindsay, did not choose among alternative *methods* of diagnosis, but rather chose among alternative *conclusions* based on alternative *beliefs* as to whether immature tissue in an ovarian teratoma is malignant or benign. Appellant further argues that because the instruction was not augmented with a specific statement of a physician's duty of disclosure under the professional standard of care, it could have misled the jury into believing that if the diagnosis of appellant's tumor as benign was not in itself negligently performed, respondents could not be considered negligent, regardless of the challenged nondisclosure.

The "alternative methods" instruction was not applicable to the present case. Appellant did not contend that Dr. Lindsay had chosen an unrecognized or unapproved method of diagnosis; rather, she argued that respondents should have informed appellant of alternative interpretations of the medical evidence with which they were presented. The error, however, is not cognizable on this appeal. Appellant's theory is that the jury was misled because the "alternative methods" instruction was not augmented with a statement of respondents' duty of disclosure pursuant to the professional standard of care. This point was not properly raised before the trial court. Appellant did not request the court to amplify the instruction in the manner she now claims was necessary. Her failure to complain at trial of the misleading nature of the instruction by requesting such amplification was a waiver of her right to assert the point on appeal. (See, e.g., *Montez* v. *Ford Motor Co.* (1980) 101 Cal.App.3d 315, 320 fn. 1 [161 Cal.Rptr. 578]; *Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 13 [130 Cal.Rptr. 416]; *Downing* v. *Barrett Mobile Home Transport, Inc.* (1974) 38 Cal.App. 3d 519, 522-523 [113 Cal.Rptr. 277]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, §§ 192-194, pp. 3012-3014; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 276-278, pp. 4264-4268.) The court properly instructed the jury as to the general professional standard of care, and had no duty to instruct the jury further on its own motion. (*Downing* v. *Barrett Mobile Home Transport, Inc., supra*, 38 Cal.App.3d at p. 523; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 195, at pp. 3014-3015.)

■ Appellant challenges the court's refusal to instruct the jury that "[a]ny affirmation of fact...made directly or through another to the

plaintiff (or her mother) which related to the condition of plaintiff's tumor of the right ovary creates an express warranty that the tumor was of that condition." The proposed instruction was incorrect. The theory of express warranty is applicable to a medical personal injury case only when the physician promises that a certain result will follow from a procedure or treatment, and the patient consents to treatment in reliance on that promise. (*Depenbrok* v. *Kaiser Foundation Health Plan, Inc.* (1978) 79 Cal.App.3d 167, 171 [144 Cal.Rptr. 724].) Appellant and her mother were told *after* the surgery that the tumor was benign. Appellant did not consent to any treatment in reliance on such post-surgery statements; those statements were not the basis of any contract.

■ Appellant contends that the court erred when it (1) excluded testimony by an expert witness, Dr. George Loquvam, as to a telephone conversation he had had with a Dr. Scully, and (2) precluded the personal appearance of Dr. Scully at trial. Counsel for respondent Lindsay had said in his opening statement that witnesses would testify that, on a grading scale between zero and three (zero being totally benign), appellant's ovarian teratoma was a grade one teratoma and her retroperitoneal tumor was grade zero. Approximately two weeks before trial had commenced, counsel for appellant had interviewed Dr. Scully, a Boston specialist; Scully told him that in his opinion the ovarian teratoma was grade three and the retroperitoneal tumor was grade one. Counsel did not intend to call Dr. Scully in his case-in-chief, but following the opening statement by counsel for Lindsay, he considered calling Scully on rebuttal. Scully informed him, however, that he did not think he could come to California for that purpose. Counsel asked Scully to confer by telephone with Dr. Loquvam. Scully and Loquvam did confer; appellant's attorney subsequently attempted to question Dr. Loquvam as to Scully's statements in that conversation, arguing that Dr. Loquvam had relied on those statements in forming his own opinions. The court excluded such testimony, citing *Whitfield* v. *Roth* (1974) 10 Cal.3d 874 [112 Cal.Rptr. 540, 519 P.2d 588].

Counsel later renewed his request to examine Dr. Loquvam concerning Dr. Scully's opinion; he also asked to be allowed to attempt to procure the appearance of Dr. Scully. Counsel for Lindsay argued that Scully's personal appearance was precluded by a pretrial order excluding the testimony of expert witnesses not disclosed in accordance with the order. The court denied the requests.

The court properly excluded the proposed testimony of Dr. Loquvam as to statements made to him by Dr. Scully. Opinions of out-of-court experts are not admissible to show the basis of a testifying expert's opinion if the witness did not use the opinions of the out-of-court expert in the course of treatment or diagnosis of the plaintiff. Dr. Loquvam was consulted only as an expert witness and was then called to offer expert opinion evidence. Loquvam's testimony concerning Scully's opinion was inadmissible. (*Whitfield* v. *Roth, supra,* 10 Cal.3d at pp. 894-895.)

█ Appellant argues that the court should have permitted the appearance of Dr. Scully, despite the pretrial order precluding the appearance of undisclosed experts, because the need for Dr. Scully's testimony regarding the grading of tumors did not emerge until counsel for Dr. Lindsay mentioned the subject in his opening statement. Appellant relies on *Rangel* v. *Graybar Electric Co.* (1977) 70 Cal.App.3d 943, 947-950 [139 Cal.Rptr. 191], where the court held that the plaintiff should have been permitted to introduce an expert rebuttal witness not named in answers to interrogatories because the need to introduce the witness appeared only during the trial. But the record does not indicate that the court was informed that appellant was attempting to introduce Dr. Scully to rebut defense expert testimony as to the grading of appellant's tumors. Rather, appellant appears from the record to have attempted to introduce Dr. Scully *as an alternative to the excluded testimony by Dr. Loquvam,* to show the basis for opinion testimony by Dr. Loquvam. Counsel requested that he "be able to, if I was able to prevail upon Dr. Scully to either come here, or for, again, Dr. Loquvam to use the information that he would partly base his opinion, on rebuttal. . . ." Counsel incorporated by reference his previous remarks in arguing for admission of testimony by Dr. Loquvam as to statements by Dr. Scully that formed a basis for Loquvam's opinion, and he gave no indication that he was attempting to introduce Dr. Scully for any reason other than to introduce such statements. The court was not shown that the personal appearance of Dr. Scully was justified under such an approach as was taken in *Rangel* v. *Graybar Electric Co.* The record does not reflect any argument by appellant that she should have been relieved from the limiting provisions of the pretrial order; respondents might have rebutted such an argument by showing that they would have been prejudiced or unduly surprised by such relief. The point, therefore, was not properly raised before the trial court, and is not cognizable on this appeal. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 276, at pp. 4264-4265.)

■ Appellant contends that the burden of proof of causation should have been shifted to respondents, and that the court erroneously instructed the jury on the law of comparative negligence. Review of these matters, however, is unnecessary to the decision on this appeal. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 223, at pp. 4212-4213.) In its special verdict the jury rendered negative answers to the first issue presented, as to whether respondents were negligent. The jury never reached the subsequent issues listed in the special verdict, as to causation and negligence by appellant. Inasmuch as the jury's "no negligence" verdict is to be upheld on this appeal, any error as to the causation and comparative negligence issues was harmless.

Affirmed.

Caldecott, P. J., and Kroninger, J.,* concurred.

A petition for a rehearing was denied August 7, 1980, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied September 17, 1980.

---

*Assigned by the Chairperson of the Judicial Council.