[No. A112854. First Dist., Div. Five. Jan. 19, 2007.]

KURT HAHN, Plaintiff and Appellant, v.
DANIEL MIRDA et al., Defendants and Respondents.

742

**COUNSEL**

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, C. Athena Roussos and Noel M. Ferris for Plaintiff and Appellant.

Oium Reyen & Pryor, Virgil F. Pryor and Priscilla P. Degois for Defendants and Respondents.

Opinion

**JONES, P. J.**—In this appeal from a ruling on a demurrer, we consider this factual predicate: A woman is told she has a particularly aggressive form of breast cancer. She undergoes chemotherapy and has a radical mastectomy in an attempt to save her life. The pathology report prepared after the surgery shows the woman did not have cancer at all. The woman's doctors learn their patient did not have cancer, but they do not tell her. As a result, the woman lives for more than two years believing she has a fatal disease. We hold these facts can support her husband's independent cause of action for loss of consortium.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Since the focus of our inquiry is the sufficiency of the allegations challenged by respondents' demurrer, we set forth the facts alleged in the operative third amended complaint of plaintiff Cynthia Hahn and her husband, plaintiff and appellant Kurt Hahn.

Respondents Daniel Mirda and Paul Dugan are medical doctors. Cynthia Hahn is their patient.

In March 2001, Ms. Hahn was diagnosed with cancer of her right breast. Dr. Robert Lanflisi, a surgeon, performed a lumpectomy. The pathology report stated there was no residual cancer in Ms. Hahn's breast.

Ms. Hahn underwent a course of radiation after her lumpectomy. When the treatments were complete, Ms. Hahn noted changes in her breast. She was referred back to Dr. Lanflisi.

Dr. Lanflisi biopsied Ms. Hahn's skin and the areas of her breast where the tumor had been removed, and sent the specimens to a lab for testing. In September 2001, the biopsies came back positive. The conclusion was that there was recurrent cancer in both specimens.

Relying on the positive biopsy, Dr. Dugan concluded that Ms. Hahn had inflammatory carcinoma, a particularly aggressive form of cancer that has a poor prognosis. As a result, Ms. Hahn underwent four months of intensive chemotherapy and then had a radical mastectomy.

A specimen from Ms. Hahn's breast was sent to a lab for analysis. On January 24, 2002, the pathologist reported that the specimen was entirely free from cancer.

Dr. Lanflisi was surprised by this result. He asked that the September 2001 biopsy slides be reexamined. On February 6, 2002, Dr. Lanflisi received a report that indicated the September 2001 biopsy slides had been misread. In fact, they showed no evidence of cancer.

Dr. Lanflisi told Dr. Mirda and Dr. Dugan what he had learned. He asked them to tell Ms. Hahn that she did not have recurrent cancer. They agreed to do so.

Dr. Dugan and Dr. Mirda did not tell Ms. Hahn she did not have recurrent cancer. She did not learn the truth until July 2004 when Dr. Lanflisi testified at a deposition. As a result Ms. Hahn lived for more than two years believing that she had a terminal illness.

Subsequently, the Hahns filed a complaint against several doctors including Dr. Mirda and Dr. Dugan (hereafter respondents). As amended, as is relevant here, the complaint alleged three causes of action. Ms. Hahn sought damages from respondents based on negligence and fraudulent concealment causes of action. Appellant Kurt Hahn sought damages from respondents under a loss of consortium theory.

Respondents demurred to the complaint. They argued they were entitled to prevail on the negligence and fraudulent concealment causes of action because they only had a duty to provide Ms. Hahn with information that was relevant to proposed future treatment. Since they learned about the biopsy results *after* Ms. Hahn's surgery, respondents argued they were entitled to prevail as a matter of law. Respondents argued that they were entitled to prevail on appellant's cause of action for loss of consortium because it was dependent upon Ms. Hahn's cause of action.

The trial court agreed with respondents' arguments and sustained the demurrer without leave to amend ruling respondents were entitled to prevail as a matter of law.

While this appeal was pending, Ms. Hahn dismissed her appeal leaving her husband as the sole appellant.[1]

## II. *DISCUSSION*

Appellant contends the trial court erred when it sustained respondents' demurrer.

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

█ Here, the trial court sustained respondents' demurrer to the negligence and fraudulent concealment causes of action. First, it is clear that appellant cannot state a cause of action under either of those theories. An essential element of causes of action for negligence and fraudulent concealment is duty. To establish negligence, the evidence must show the alleged wrongdoer owed some duty of care to the person injured. (*Routh v. Quinn* (1942) 20 Cal.2d 488, 491 [127 P.2d 1].) To state a cause of action for fraudulent concealment, the defendant must have been under a duty to disclose some fact to the plaintiff. (*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 613 [7 Cal.Rptr.2d 859].) The complaint in this case alleges that respondents acted negligently toward Ms. Hahn and that they failed to disclose certain facts to her. While respondents may well have owed duties of care and disclosure to Ms. Hahn, their patient, appellant has not cited and we are not aware of any authority that would impose similar duties toward him as a patient's spouse. Indeed, appellant concedes the point.

---

[1] The parties have not told us why Ms. Hahn dismissed her appeal. Neither party contends that dismissal affects appellant's rights in the current appeal.

However, this does not mean that the negligence and fraudulent concealment causes of action are irrelevant to our analysis of whether appellant stated a cause of action for loss of consortium. He alleged he was married to Ms. Hahn and that as a "direct and proximate result" of respondents' "negligence and fault" he suffered "loss of comfort, society, affection, love, companionship, solace, moral support, [and] sexual relations . . . ." The parties implicitly agree that these allegations were sufficient to state a cause of action for loss of consortium. That position is consistent with a well-respected practice text.[2] Appellant is a foreseeable plaintiff to whom respondents owe a separate duty of care, arising out of respondents' tortious injury to his wife, but compensating plaintiff for impairment of his wholly separate interest in his wife's consortium. (*Lantis v. Condon* (1979) 95 Cal.App.3d 152, 157 [157 Cal.Rptr. 22] (*Lantis*); *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399–400, 405 [115 Cal.Rptr. 765, 525 P.2d 669].)

A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse. While appellant husband's "injury incurred can neither be said to have been 'parasitic' upon the [wife's] cause of action nor can it be properly characterized as an injury to the marital unit as a whole" (*Lantis, supra*, 95 Cal.App.3d at p. 157), it stands or falls based on whether the spouse of the party alleging loss of consortium has suffered an actionable tortious injury. (*Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1067 [272 Cal.Rptr. 250]; *Brittell v. Young* (1979) 90 Cal.App.3d 400, 407, fn. 5 [153 Cal.Rptr. 387].) Thus, we must determine whether the negligence and fraudulent concealment causes of action upon which the loss of consortium cause of action is based, are valid. We turn our attention first to Ms. Hahn's allegations in her first cause of action for negligence.

"The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from

---

[2] See 4 Levy et al., California Torts (2006) Loss of Consortium, section 56.02[2], page 56-4, stating that a loss of consortium cause of action has four elements:
(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury;
(2) a tortious injury to the plaintiff's spouse;
(3) loss of consortium suffered by the plaintiff; and
(4) the loss was proximately caused by the defendant's act.

the professional's negligence. [Citations.]" (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; see also *Turpin v. Sortini* (1982) 31 Cal.3d 220, 229–230 [182 Cal.Rptr. 337, 643 P.2d 954].)

The negligence cause of action here alleges that respondents were Ms. Hahn's physicians, that respondents "negligently cared for, diagnosed and treated" Ms. Hahn and "failed to exercise the standard of care and skill ordinarily possessed and reasonably required of physicians" and that as a "proximate result of such negligence and carelessness" Ms. Hahn was "injured in her health, strength and activity and has sustained injury to her body and shock and injury to her nervous system and person . . . ." We conclude those allegations are sufficient to state a cause of action for professional negligence.

Respondents argue that they did not have a duty to disclose to Ms. Hahn information that was not known to them at the time Ms. Hahn underwent the alleged unnecessary treatment. However, that is not what the complaint alleges. The complaint states that "On or after February 6, 2002, defendants . . . Dugan, and Mirda negligently cared for, diagnosed and treated plaintiff [Cynthia Hahn] . . . ." The complaint *does not* state that respondents' negligence is limited to, or based on their failure to disclose. "A demurrer tests the pleadings alone and not the evidence or other extrinsic matters. Therefore, it lies only where the defects appear on the face of the pleading or are judicially noticed (Code Civ. Proc., §§ 430.30, 430.70). The only issue involved in a demurrer hearing is whether the complaint, as it stands, unconnected with extraneous matters, states a cause of action [citation]." (*SKF Farms v. Superior Court* (1984) 153 Cal.App.3d 902, 905 [200 Cal.Rptr. 497].) The complaint as it stands, unconnected with extraneous matters, states a cause of action. Respondents cannot validly challenge the complaint based on facts that are not alleged in the complaint or judicially noticeable.

■ Alternately, respondents argue the court properly sustained their demurrer to the negligence cause of action because the negligence allegations were pleaded too generally. We disagree. Negligence may be alleged in general terms; that is, it is sufficient to allege an act was negligently done without stating the particular omission which rendered it negligent. (*McMillan v. Western Pac. R. R. Co.* (1960) 54 Cal.2d 841, 845 [9 Cal.Rptr. 361, 357 P.2d 449]; *Brooks v. E. J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669, 680 [255 P.2d 802].) "[T]here is no requirement that [the plaintiff] identify and allege the precise moment of the injury, or the exact nature of the wrongful act." (*Guilliams v. Hollywood Hospital* (1941) 18 Cal.2d 97, 102

[114 P.2d 1].) The complaint here alleged that respondents "negligently cared for, diagnosed and treated" Ms. Hahn. Those allegations were sufficient.

We turn next to the fraud cause of action.

■ "[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." (*Marketing West, Inc. v. Sanyo Fisher (USA) Corp, supra,* 6 Cal.App.4th at pp. 612–613.)

Here, the complaint alleges that respondents learned from Dr. Lanflisi that Ms. Hahn did not have recurrent breast cancer, that Dr. Lanflisi requested that respondents inform Ms. Hahn of her true diagnosis and that they agreed to do so, that respondents concealed from Ms. Hahn the material fact that she did not have recurrent breast cancer, that respondents had a duty to disclose that fact because they were Ms. Hahn's treating physicians, that respondents intentionally concealed the fact that Ms. Hahn did not have cancer intending to defraud her, that Ms. Hahn did not know the true facts and would not have acted as she did if she had known the true facts, and that as a result of the concealment, Ms. Hahn suffered monetary damages. We conclude the complaint states a cause of action.

■ Respondents argue the court properly sustained their demurrer because they did not have a duty to tell Ms. Hahn she did not have breast cancer. We disagree. The doctor-patient relationship is a fiduciary one and as a consequence of the physician's "fiducial" obligations, the physician is prohibited from misrepresenting the nature of the patient's medical condition. (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1188–1189 & fn. 10 [23 Cal.Rptr.2d 131, 858 P.2d 598].) This long-standing principle has been recognized repeatedly by the courts of this state. (E.g., *Bowman v. McPheeters* (1947) 77 Cal.App.2d 795, 800 [176 P.2d 745]; see *Stafford v. Shultz* (1954) 42 Cal.2d 767, 777 [270 P.2d 1]; *Wohlgemuth v. Meyer* (1956) 139 Cal.App.2d 326, 331 [293 P.2d 816].) Given the procedural issue before us, we need not and do not hold that as a matter of law respondents were obligated to tell Ms. Hahn she did not have breast cancer.

Next, in a variant of the argument that proved successful in the court below, respondents contend they only had a duty to provide Ms. Hahn with information that was relevant to treatment that was being proposed. They argue it is "axiomatic" that they cannot be held liable for information they did not know at the time of the alleged unnecessary treatment.

■ Under the doctrine of informed consent, a doctor does have a duty to disclose to his patient all material information that is necessary to make an informed decision about a proposed treatment. (*Arato v. Avedon, supra*, 5 Cal.4th at p. 1186; *Cobbs v. Grant* (1972) 8 Cal.3d 229, 243–245 [104 Cal.Rptr. 505, 502 P.2d 1].) However, the cases we have cited above show a doctor also has a separate duty not to misrepresent the nature of a patient's medical condition.[3] Appellant pleaded a cause of action for fraud, not a cause of action for damages based on lack of informed consent. It is irrelevant that Ms. Hahn may not have been able to state a cause of action based on a theory of liability she did not allege.

Next respondents contend the trial court ruled correctly because the complaint fails to allege that they "*knew* [Ms. Hahn] was not informed of the results of the re-read and fails to allege that [they] *knew* that the results of the re-read were not readily accessible to [Ms. Hahn]." (Original italics.) Respondents have not cited any case that holds those allegations are necessary to state a cause of action for fraudulent concealment, and the sole case they do cite, *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282 [17 Cal.Rptr.3d 26], does not so hold. The *Vega* court simply stated that the "question in a nondisclosure case is whether the defendant knows of material facts, and also knows that those facts are neither known nor readily accessible to the plaintiff." (*Id.* at p. 295.) The *Vega* court cited BAJI No. 12.36, paragraph 4 for that proposition. (*Vega, supra*, at p. 295.) BAJI No. 12.36, paragraph 4 states, "A duty to disclose known facts arises *in the absence of a fiduciary or confidential relationship* where one party knows of material facts and also knows that these facts are neither known nor readily

---

[3] The fact that doctors have separate duties to (1) disclose information that is necessary to make an informed decision about proposed treatment, and (2) disclose information about the nature of a patient's medical condition, is suggested by the administrative regulations that govern general acute care hospitals and their staffs. California Code of Regulations, title 22, section 70707, subdivision (b)(4) states that patients have the right to "Receive information about the illness, the course of treatment and [the] prospects for recovery . . . ." Section 70707, subdivision (b)(5) states patients also have the right to "Receive as much information about any proposed treatment or procedure as the patient may need in order to give informed consent . . . ."

accessible to the other party." (Italics added, fn. omitted.) Thus, read in context, the *Vega* court was simply discussing disclosure principles that apply where there is not a fiduciary or confidential relationship between the parties. This case, by contrast, is premised on a fiduciary relationship.[4]

Finally, respondents contend the trial court correctly sustained the demurrer because the entire complaint was a sham pleading. To put this argument in context, some background is necessary.

The complaint at issue is a third amended complaint. The general allegations of the second amended complaint, as is permitted by general pleading rules (see 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 363, 364, pp. 466–468), alleged alternate facts. Specifically paragraphs 15 and 16 of the *second* amended complaint stated as follows:

"15. On or about February 6, 2002, [Dr. Lanflisi] informed plaintiffs other treating physicians, namely, defendants . . . [Dugan] and [Mirda], of the error in reading the September [2001] slides and that [Ms. Hahn] did not have recurrent breast cancer."

"16. In the alternative, plaintiff is informed and believes and thereon alleges that [Dr. Lanflisi] did not inform plaintiffs' other treating physicians,

---

[4] At oral argument, respondents cited three additional cases, claiming they support the conclusion that the trial court ruled correctly.

Normally we do not address arguments that are cited in such a dilatory fashion. (*Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356–357, fn. 6 [165 Cal.Rptr. 787, 612 P.2d 877].) Furthermore, because respondents simply cited the cases, and did not provide any analysis, we are required to "guess" the basis for respondents' argument.

However, for the sake of completeness we will address the cases briefly.

First, respondents rely on *Jamison v. Lindsay* (1980) 108 Cal.App.3d 223 [166 Cal.Rptr. 443]. However, the court there ruled that the trial court did not err when it declined to instruct the jurors on informed consent when the plaintiff had failed to present any evidence at trial that the defendants had proposed any therapy that would have required the plaintiff to make an informed decision. (*Id.* at pp. 230–231.) Here, we are dealing with a demurrer, not whether sufficient evidence was presented to support an instruction. *Jamison* is factually and procedurally distinguishable.

Respondents also rely on *Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977 [263 Cal.Rptr. 878], and *Scalere v. Stenson* (1989) 211 Cal.App.3d 1446 [260 Cal.Rptr. 152]. However, the courts in those cases simply held that a doctor does not have a duty to disclose the risks and benefits of a procedure that the doctor *does not* recommend. (*Munro, supra*, at pp. 987–988; *Scalere, supra*, at pp. 1452–1453.) The complaint in this case is not based on respondents' failure to disclose the risks and benefits of a procedure not recommended, but their failure to disclose a critical fact concerning Ms. Hahn's physical condition about which they were fully aware. *Munro* and *Scalere* also are distinguishable.

namely defendants . . . [Dugan] and [Mirda], of the error in reading the September 2001 slides and that plaintiff did not have recurrent breast cancer."

The third amended complaint omitted the alternate factual scenario that had been alleged in paragraph 16 and relied solely on nondisclosure allegations that previously had been contained in paragraph 15.

Respondents now contend the omission of the facts alleged in paragraph 16 of the second amended complaint shows the third amended complaint is a "sham pleading" that the trial court correctly dismissed. According to respondents, "The omission severely undermines the credibility and veracity of [appellant's] causes of action . . . and the material omission also establishes that [appellant] does not fully and truthfully believe that Dr. Dugan and Dr. Mirda were ever informed of the results."

█ Under the sham pleading doctrine, allegations in an original pleading that rendered it vulnerable to demurrer or other attack cannot simply be omitted without explanation. (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425–426 [42 Cal.Rptr.3d 807].) The purpose of the doctrine is to enable the courts to prevent an abuse of process. (*Id.* at p. 426.) The doctrine is not intended to prevent honest complainants from correcting erroneous allegations or to prevent the correction of ambiguous facts. (*Ibid.*)

Here, the second amended complaint and the third amended complaint were consistent. Both alleged that on or about February 6, 2002, Dr. Lanflisi told respondents that Ms. Hahn did not have recurrent breast cancer. While the third amended complaint omitted the alternate allegation that Dr. Lanflisi did not tell respondents Ms. Hahn did not have breast cancer, there is no indication that omission was made in bad faith or that appellant was engaged in an abuse of process. Rather, read in context, it appears appellant was omitting an alternate factual allegation that had proven to be erroneous. The sham pleading doctrine was not applicable here.

In sum, we conclude the complaint states causes of action for negligence and fraudulent concealment. Since those causes of action were plead adequately, appellant had a viable cause of action for loss of consortium.

### III. *DISPOSITION*

The judgment is reversed. Costs to appellant.

Gemello, J., and Miller, J.,* concurred.

---

*Judge of the Superior Court of San Francisco County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.