Filed 6/17/26  Cazares v. City of Beaumont CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JUAN GABRIEL CAZARES et al.<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CITY OF BEAUMONT,<br><br>    Defendant and Respondent. | D086594<br><br><br><br>(Super. Ct. No. CVRI2300446) |

APPEAL from a judgment of the Superior Court of Riverside County, Godofredo Magno,  Judge.  Affirmed.

Walter Clark Legal Group, Walter T. Clark and Lawrence S. Pressley for Plaintiffs and Appellants.

Slovak Baron Empey Murphy & Pinkney and Shaun M. Murphy for Defendant and Respondent.

INTRODUCTION

Juan Gabriel Cazares fell from his bicycle while riding in a designated bicycle lane in the City of Beaumont (City).  He was injured and sued the City for negligently allowing the bicycle lane to harbor a dangerous condition. His wife, Sandra Rosales, sued for loss of consortium.

Cazares and Rosales appeal from the trial court's order granting summary judgment against them. We affirm, but we base our decision on a different ground than the trial court. We independently conclude there is no triable issue of material fact as to whether the condition alleged by Cazares and Rosales to have been dangerous was sufficiently obvious to have provided constructive notice to the City.

FACTUAL AND PROCEDURAL BACKGROUND[1]

I.

*Undisputed Material Facts*

On January 30, 2022, Cazares was riding his bicycle eastbound on a designated bicycle lane on Oak Valley Parkway. He fell and was rendered unconscious for several minutes. The weather was dry and clear. There were no witnesses to the accident.

"Immediately prior to [the] accident," Cazares did not see the "raised asphalt" in the bicycle lane that he later alleged "caused [his] fall." In his words, "I didn't see anything obvious that would be a hazard or cause me to lose control at the time. [¶] . . . [¶] . . . [A]gain, it wasn't something that was obvious to me that—like a cone, a fire hydrant, or something apparent to me. I didn't see anything like that that would make me flip over or lose control and violently land on my head. So I didn't see anything obvious." In addition, before the accident, Cazares "had ridden his bicycle eastbound on

---

1    Under the governing standard of review, we examine the evidence de novo and our account of the facts is presented in the light most favorable to Cazares and Rosales (the nonmoving parties) and, where the evidence is in conflict, assume their version of all disputed facts is the correct one. (See *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 470; *Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 999.)

Oak Valley Parkway by the [a]ccident [s]ite more than 10 times and possibly as many as 40 times." But "[i]n the many times [he] rode his bicycle across the [a]ccident [s]ite . . . he never noticed the roadway condition he allege[d] caused his accident."

The parties agree the City did not create the allegedly dangerous condition of the asphalt in the bicycle lane. They also agree, "[t]he difference in elevation" in the asphalt "was not readily apparent to both motor and non-motor transportation using the [roadway] in a reasonable and foreseeable manner."

## II.

### *Lawsuit*

In their operative complaint, Cazares and Rosales asserted two causes of action against the City. Cazares asserted one for dangerous condition of public property in violation of Government Code section 835. Rosales asserted another for loss of consortium.[2]

The complaint alleged Cazares was riding in the bicycle lane when his bicycle "hit a dangerous and raised area of uneven, separated, distorted, and damaged surface of a shared roadway that protruded into [his] route [that] was obstructed and obscured by overgrown landscaping on an adjacent property." It alleged "the dangerous condition . . . caused [Cazares] significant personal injuries and also caused damage to his bicycle." It further alleged the City had "actual and constructive notice of the dangerous condition a sufficient time prior to [his] injury to have taken measures to protect bicyclists."

---

[2] Cazares voluntarily dismissed a third cause of action against the City without prejudice.

3

III.

*Summary Judgment Proceedings*

The City moved for summary judgment. It asserted there was no triable issue of material fact with respect to two required elements of Cazares's cause of action for dangerous condition of public property. (Code Civ. Proc.,[3] § 437c, subd. (f)(1).)

The parties correctly agree the relevant element of Cazares's cause of action for dangerous condition of public property in violation of Government Code section 835 is that either "(a) [a] negligent or wrongful act or omission of an employee of [a] public entity within the scope of his employment created the dangerous condition; or [¶] (b) *[t]he public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.*" (Italics added.) The parties also correctly agree that Rosales's cause of action for loss of consortium is derivative and dependent upon the success or failure of Cazares's claim. (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 746 ["A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse."].)

---

[3]     Undesignated statutory references are to the Code of Civil Procedure.

4

A.     *Moving Papers*[4]

As to Cazares's cause of action for dangerous condition of public property, the City moved for summary judgment on the grounds there was no triable issue of material fact that the City had actual or constructive notice of the allegedly dangerous condition of the asphalt in the bicycle lane. (§ 437c, subd. (f)(1).) Robert Vestal, the Director of Public Works and City Engineer for the City, submitted a declaration in support of the City's motion.[5] Vestal's "responsibilities include overseeing the construction, maintenance

---

[4]     The City's motion addressed the elements of both causation and notice. Because we conclude summary judgment was warranted based on the City's contention there was no triable issue of material fact on the question of notice, we limit our discussion to the facts and arguments relevant to that element.

[5]     Cazares and Rosales objected to several statements in Vestal's declaration. Relevant here, they objected on hearsay grounds to testimony about the street sweeping schedule for Oak Valley Parkway, citing *People v. Sanchez* (2016) 63 Cal.4th 665. Their objection has no merit. *Sanchez* holds that experts who are not percipient witnesses may not testify and base their opinion on case-specific hearsay without independent proof of the foundational facts. (*Id.* at pp. 670–671.) Vestal testified as an expert. But as the director in charge of the department that did the street sweeping, he could testify about the schedule as a percipient witness without violating the principles addressed in *Sanchez*. Their other objections to testimony by Vestal in his declaration are relevant to whether the City had a reasonable and adequate inspection program. We do not address these objections because we find summary judgment was proper based on our assessment of the lack of evidence that the raised asphalt was obviously dangerous. We therefore do not reach or rule on these additional objections.

and operation of public facilities and infrastructure for the City, including its sidewalks, streets[,] and roads."

According to Vestal, "Prior to [Cazares's] accident, the City had no knowledge of the raised portion of the asphalt on Oak Valley Parkway that [Cazarez] allege[d] caused him to fall." The roadway where the raised asphalt was located was "cleaned and swept on the second and fourth Tuesday of every month." It was also located "only four blocks from the City's Community Center and [was] therefore travelled very frequently by City staff." In addition, "City staff, crew, and contractors are trained and instructed to scan and inspect all streets and roads for potential issues while regularly working in or traveling through the City," and "since 2012," the City has maintained "a database of all complaints and requests for service related to streets and sidewalks, including reports of potholes or other conditions in need of repair." Based on a review of this database, "[i]n the approximately eight years preceding [Cazares's] accident[,] . . . the City received no reports from City staff, crews, or contractors regarding any abnormal or defective pavement condition or other potentially dangerous condition on the relevant portion of Oak Valley Parkway."

Vestal further averred, "The City . . . encourages the public to report any potential condition or safety issues they observe through the City's Citizens Complaint Portal . . .[,] which the City closely monitors. The Website allows citizens to call City Hall to report potential condition or safety issues they observe. . . . [D]uring the approximately three years preceding [Cazares's] accident, the City received no reports from the public regarding any abnormal or defective pavement condition or other potentially dangerous condition on the relevant portion of Oak Valley Parkway."

6

According to Vestal, the City's Police Department records, dating back to 2005, "contain[ ] no record of a bicycle accident or other non-vehicle related injury occurring at or near the location of [Cazares's] accident." And according to the City's legal records, there have been no "government claims made, or lawsuits filed, relating to the alleged dangerous condition at issue."

In addition to information about the lack of complaints to the City, Vestal testified that the City determined after an inspection of its roadways that "the relevant portion of Oak Valley Parkway, including the bicycle lane, [should be] slurry sealed." The City completed the slurry seal work in July or August 2020.

Based on Vestal's testimony and the undisputed facts recounted above, the City argued that, even assuming for purposes of argument the raised asphalt was dangerous, Cazares and Rosales would be unable to establish it "had actual or constructive notice . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Gov. Code, § 835, subd. (b).) The City argued Cazares and Rosales could not demonstrate actual notice because its records showed no complaints, requests for service, claims, or reports of injury "relating to the relevant portion of Oak Valley Parkway prior to [Cazares's] fall."

The City argued that constructive notice could not be established for two reasons. First, the "the allegedly dangerous condition was not of such an obvious nature that the City, in the exercise of due care, should have discovered the condition and/or its dangerous character prior to [Cazares's] fall." Had its dangerous character been obvious, the City argued, someone would have noticed it and reported it, either a City staff member, street sweeper, or contractor, or a member of the public. But not only were there no

7

such reports, Cazares himself acknowledged the raised asphalt " 'was not readily apparent to both motor and non-motor transportation.' "

Second, even assuming the condition was obvious, the City's implementation of a reasonably adequate inspection system precluded a finding of constructive notice. The City slurry sealed the bike lane where Cazares fell 16 months before the accident. It encourages the public to report safety issues observed on its roadways using a complaint portal on its website, which it closely monitors. It has trained its staff, crews, and contractors "to scan and inspect all streets and roads for potential safety issues while regularly working in or traveling through the City," including "the workers who clean and sweep the relevant portion of Oak Valley Parkway on a bi-weekly basis."

Based on this evidence of lack of notice, including Cazares's admission the raised asphalt was "not readily apparent," the City contended Cazares and Rosales would be unable to establish the City violated Government Code section 835 by negligently allowing the bicycle lane to harbor a dangerous condition. And as a result, Rosales would be unable to establish a claim for loss of consortium.

B.     *Opposition*[6]

In their opposition to the City's motion for summary judgment, Cazares and Rosales addressed the element of notice but they did not dispute the City

---

[6]     Cazares and Rosales sought more time to prepare their opposition pursuant to section 437c, subdivision (h). The declaration in support of their ex parte application stated they needed to depose two witnesses to obtain evidence to counter the City's arguments relating to "causation and duty" and did not mention constructive notice. Accordingly, we do not address their contention that the trial court erred when it denied their request.

lacked actual notice. Instead they claimed there was a triable issue of material fact with respect to constructive notice. They claimed the condition was " 'of such an obvious nature that [the City], in the exercise of due care, should have discovered the condition and its dangerous character.' "

Dale Dunlap submitted a declaration in support of Cazares's and Rosales's opposition. Dunlap is a registered civil engineer with 42 years of experience in "transportation design, land development, and other disciplines." His specific expertise includes "construction practices, design and installation of roadway striping and signage, traffic signals, temporary traffic controls, storm drains including open and closed drainage systems, water and sewerage systems, transportation safety systems[,] . . . and stage construction on public highways."

Dunlap reviewed the following four pictures of what he termed the "bump" in the bicycle lane pavement that Cazares claimed caused his injury.[7]

---

[7]     We consider these photographs and related expert testimony in deciding the issues raised on appeal notwithstanding that the trial court sua sponte excluded them from evidence on the ground that Cazares and Rosales purportedly failed to authenticate them. The court erred because it overlooked Cazares's declaration under penalty of perjury that the photographs "accurately depict the dangerous condition and scene of my fall in January 2022." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267–268 ["A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted."].)









Dunlap opined the bump "appear[ed] to have been caused by tree roots from a tree located behind the concrete curb, in the parkway." In his view, the two-inch rise in the pavement "constitute[d] a dangerous condition with respect to the method of maintenance, warnings, and traffic control of the eastbound bike lane on Oak Valley Parkway, west of Starlight Avenue." In support of his opinion *that the condition was dangerous*, he discussed "design and operational guidelines" for bikeways set forth in "The Highway Design Manual (HDM)," which is published by the California Department of Transportation. (Italics added.) The HDM "calls for a vertical rise in roadway surface elevation of no more than [three-fourths of an] inch when it is perpendicular to the direction of travel." He also discussed information in several other publications that address engineering guidelines for the design and maintenance of riding surfaces in bikeways and the use of signage to warn bicyclists when dangerous conditions develop in the pavement.

In addition to his opinion the bump was dangerous, Dunlap opined, "The City failed to inspect and maintain the bike lane in a satisfactory condition as evidenced by the bump which existed on the date of the subject accident. If the City had implemented an appropriate inspection routine the deformation of the asphalt surface could have been ascertained before it became a dangerous condition for bicyclists. [¶] . . . [¶] Had the City performed adequate inspections of the bike lane [it] would have recognized the dangerous condition and could have placed a 'BUMP' warning sign on a Type II barricade in the parkway in advance of the bump and placed several cones in a taper to direct bicyclists safely past the dangerous condition."

Dunlop did not provide an opinion as to what kind of inspection by the City was warranted. He did not explain how he concluded the City's inspection practices were inadequate. Nor did he offer an opinion as to why it

11

would be readily apparent to City employees that this particular imperfection in the pavement was of such dangerous character that it obviously required repair.

Cazares and Rosales argued the dangerous nature of the bump in the pavement was obvious based on the photographs. In their words, "[t]he photographs of the condition of the raised[,] lifted[,] and broken portion of the bike lane asphalt confirm the obviousness of the dangerous condition." Reasoning from this premise, they argued the City was negligent. They contended the condition must have been present for "a substantial period of time prior to Cazares'[s] fall" because it was caused by the slow growth of a tree root, and therefore, given its obvious nature, a reasonably adequate system of inspection implemented by the City necessarily would have discovered it. In their view, "[the City] failed to inspect and maintain the bike lane in a satisfactory condition as evidenced by the large bump which existed on the date of the subject accident. If the City had implemented an appropriate inspection routine the deformation of the asphalt surface could have been ascertained before it became a dangerous condition for bicyclists."

C.    *Reply*

On the question of constructive notice, the City criticized the lack of evidence supporting Cazares's and Rosales's contention the dangerous nature of the bump in the pavement was obvious and would have been discovered by a reasonable inspection.

D.    *Trial Court Ruling*

After addressing the parties' objections to the evidence, the trial court granted summary judgment on the ground there was no triable issue of material fact with respect to the element of causation. The court did not

12

address the City's alternate contention that summary judgment was warranted with respect to the element of notice.

## DISCUSSION

The City contends the trial court correctly granted summary judgment based on the element of causation. In the alternative, the City contends the judgment can be upheld on the ground there was no triable issue of material fact with respect to the element of notice. We uphold the judgment based on the asserted alternate ground and therefore do not reach the question of causation.

## I.

### *Standard of Review*

By statute, summary judgment may only be granted "if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A moving defendant establishes a right to summary judgment by showing the plaintiff lacks the evidence to sustain one or more elements of each of its causes of action. (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 756.) "Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) Our review is independent. (*Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 517 (*Martinez*).)

Important here, on defense motion, the defendant bears the initial burden of establishing that the plaintiff's cause of action has "no merit" by

showing that the plaintiff cannot prove "one or more elements" or there is a "complete defense to the cause of action." (§ 437c, subd. (p)(2).) If this burden is met, the "burden shifts" to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action or . . . defense." (*Ibid*.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo." (*Guz, supra*, 24 Cal.4th at p. 334.) "Under our de novo standard of review, when reviewing the grant of summary adjudication, we must independently determine the construction and effect of the facts presented to the trial court as a matter of law." (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 38.) "We [also] liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

II.

*No Triable Issue of Material Fact as to the Element of Notice*

As noted, Cazares and Rosales do not contend the City created the bump in the bicycle lane condition or had actual notice of it. The question presented is accordingly whether the City had constructive notice of the condition and its dangerous character. (Gov. Code, § 835.2.) We focus on the sub-element of obviousness.

"A public entity will be charged with constructive notice of a dangerous condition only if (1) the dangerous condition existed for a sufficient period of time before the plaintiff's injury, and (2) it was sufficiently obvious that the entity acted negligently in not discovering and repairing it." (*Martinez, supra*, 71 Cal.App.5th at p. 514.) "The second element—that the defect be so obvious, conspicuous, or notori[ous] that it should have been discovered by

14

the public entity—is critical because it is the public entity's failure to discover and repair an *obvious* defect that makes it appropriate to impute knowledge of that defect to the entity, which is what renders that entity negligent for failing to correct a defect despite that imputed knowledge." (*Id*. at p. 519 [cleaned up].) "If [a] defect . . . presents no element of conspicuousness or notoriety, its continued existence does not impart constructive notice to the municipality." (*Barrett v. Claremont* (1953) 41 Cal.2d 70, 73.)

"A defect is not obvious just because it is visible." (*Martinez, supra*, 71 Cal.App.5th at p. 520, italics omitted.) A defect is not obvious just because it is dangerous. (*Ibid.*) In addition, "[w]hile a municipality is required to exercise vigilance in keeping its streets and sidewalks in a reasonably safe condition for public travel, it is by no means an insurer against accidents, nor can it be expected to keep the surface of its [streets and] sidewalks free from all irregularities." (*Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 365 [cleaned up].)

Here, the City's initial showing on its motion was sufficient to shift the burden to Cazares and Rosales to demonstrate a triable issue of material fact on the question of obviousness. (§ 437c, subd. (p)(2).) According to the City's expert, Vestal, the Oak Valley Parkway bike lane near where Cazares fell from his bicycle was slurry sealed in 2020 after the City conducted one of its regular inspections. After that, the City received no reports of any potentially dangerous condition, neither from City staff, who are trained to report defective pavement conditions in need of repair and who sweep the street on a bi-weekly basis, nor from the public. City records dating back to 2005 further revealed no reports of accidents in the relevant area. This evidence standing alone supports a reasonable inference that, had the bump

15

in the pavement presented a dangerous condition that was obvious, someone would have noticed it and reported it.

In addition to Vestal's testimony, Cazares and Rosales admitted in the operative complaint that "the difference in elevation [in the pavement] was *not readily apparent* to both motor and non-motor transportation using the premises in a reasonable and foreseeable manner." (Italics added.) Cazares admitted he himself had ridden his bicycle past the accident site between 10 and 40 times and never noticed "anything about the bicycle lane . . . that caused [him] concern." And he testified the condition of the asphalt was not "obvious" to him on the day of the accident.

The burden shifted to Cazares and Rosales. We conclude they failed to satisfy it. They failed to counter the City's initial showing by "either [showing] the existing evidence created a reasonable inference that the condition was obvious or to present additional evidence proving that element" so as to create a triable issue of material fact. (*Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 321 (*Heskel*).)

Starting with the photographs authenticated by Cazares, there is only one that shows how the bump in the pavement looks to a person traveling towards it in the direction of traffic, and it is shown in a deep shadow cast by a nearby tree. As best we can discern, we see nothing obviously dangerous to navigate. We can see there is an incline in the pavement leading to the crest of the bump, but we cannot see how steep it is or anything obviously dangerous about the slope. Nor can we see anything obviously dangerous about the crack at the crest of the bump. It appears to be sufficiently narrow to be of no consequence to a bike rider. Based on this picture, a cautious rider could easily avoid the widest part by riding toward the middle of the lane. As in *Heskel, supra*, 227 Cal.App.4th at page 321, "[w]hile [the

16

plaintiff's] evidence suggests that the condition was above ground and visible, it does not demonstrate that it was of a substantial size or so visible from public thoroughfares that the City, in the exercise of due care, should have become aware of it and taken corrective action to cure it."

The other three photographs show the bump from the position of a person crossing the street, not traveling in the direction of traffic. Based on these photographs, according to Cazares's and Rosales's expert, Dunlap, the condition was "*dangerous*" because it violated engineering guidelines set forth in various publications dedicated to the design and maintenance of safe riding surfaces in bike lanes. (Italics added.) We question the value of this testimony. The measurements used by Dunlap to assess the height of the rise in the asphalt are crosswise to the direction of travel. He does not explain why the rise would be dangerous if encountered while traveling in the bike lane. (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 227–228 [expert opinion unsupported by reasons or explanations are of no value in summary judgment proceedings].)

Regardless, evidence that a defective condition is dangerous does not create a triable issue of material fact as to its obviousness. An opinion that a condition was not a trivial defect and thus qualifies as a dangerous condition "is irrelevant to the distinct issue of constructive notice." (*Martinez, supra,* 71 Cal.App.5th at p. 526.) "A defect is not obvious just because it is nontrivial. That a defect in public property is not trivial establishes only that it qualifies as a dangerous condition. Nontriviality, without more, does not also mean that that the defect is *obvious*; if it did, then the constructive notice element would be automatically satisfied in every instance where that dangerous condition preexisted the accident and thus would effectively write the negligence element out of the statute. This is why courts have treated

17

the question of whether a defect is too trivial to qualify as a dangerous condition as distinct from the question of whether the defect is obvious enough to impart constructive notice." (*Id.* at p. 520, fn. omitted [cleaned up].)

For all these reasons, we conclude Cazares and Rosales failed to establish there was a triable issue of material fact as to whether the City had constructive notice of a dangerous condition in the bike lane where Cazares fell. On this ground, we affirm the trial court's grant of summary judgment.

DISPOSITION

The judgment is affirmed. Costs are awarded to the City. (Cal. Rules of Court, rule 8.278(a)(2).)


DO, J.

WE CONCUR:


DATO, Acting P. J.


RUBIN, J.

18