Filed 7/29/13  Volk v. Bianchi CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CAROLYN VOLK, | D061342 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00062522-CU-PN-NC) |
| ANTHONY BIANCHI, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Iverson, Yoakum, Papiano & Hatch, Neil Papiano and Justin A. Palmer for Plaintiff and Appellant.

Schmid & Voiles, Denise H. Greer, Robert B. Fessinger and Kyle A. Cruse for Defendant and Respondent.

Carolyn Volk appeals from a summary judgment in her medical malpractice action against Dr. Anthony Bianchi.  Volk contends the judgment should be reversed

because (1) Dr. Bianchi's breach of the standard of care and that he caused her injuries were matters of common knowledge and thus required no expert testimony, (2) the declaration of Dr. Bianchi's expert was deficient, and (3) the trial court abused its discretion in denying her request for a continuance. We reject Volk's contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Bianchi began treating Volk in September 2007 for routine gynecological care and to assist her in conceiving a child. During her initial visit, Volk provided Dr. Bianchi with medical records from her previous gynecologist, which included a record that she had a uterine fibroid. In December of that year, Volk saw Dr. Bianchi again regarding fertility medication and concerns about her inability to get pregnant. Dr. Bianchi recommended a laparoscopy and hysteroscopy. He performed those procedures on Volk in early 2008.

In June 2008, Volk saw Dr. Bianchi to address excessively painful and heavy menstrual bleeding. When the problem persisted, Volk attempted to schedule another appointment with Dr. Bianchi in January 2009. Volk saw a nurse practitioner in Dr. Bianchi's office who examined Volk's uterus and recommended an ultrasound. After the ultrasound confirmed the uterine fibroid, Dr. Bianchi recommended a hysterectomy. Volk did not consider the hysterectomy to be a good option because she wanted to get pregnant and instead elected to proceed with a myomectomy to remove the fibroid. Dr. Bianchi performed the myomectomy in March 2009.

2

In May 2009, Volk saw a fertility specialist. The specialist diagnosed Volk with cervical stenosis and explained to her that it was potentially caused by a misplaced suture during the March 2009 myomectomy procedure. Based on the specialist's recommendation, Volk returned to Dr. Bianchi to address the cervical stenosis. Dr. Bianchi discussed another hysteroscopy, laparoscopy and tubal dye study with Volk. He explained the risks of the procedures, including a risk of damaging organs and the need to repair those organs.

In September 2009, Dr. Bianchi performed an operative hysteroscopy, operative laparoscopy and tubal dye study with lysis of adhesions on Volk. During the procedures, Dr. Bianchi found moderate adhesive disease from prior procedures, including near the small intestine. Dr. Bianchi used electrocautery with a cutting device to release the adhesions from the uterus. He was concerned about potential damage to the intestine and told Volk after the procedures that he may have "'knicked'" the small intestine. Dr. Bianchi discharged Volk because she appeared to be doing well after surgery and instructed her to "'keep an eye out'" for unusual symptoms.

The next day, Volk experienced stomach cramping, nausea and vomiting. After talking to Dr. Bianchi, Volk went to the emergency department at Fallbrook Hospital. Dr. Bianchi suspected a viscous perforation and communicated his concerns to the doctor on call. Dr. Robert Keenan performed surgery on Volk and repaired a defect in the small intestine.

Dr. Bianchi followed Volk daily during her hospitalization. During that time, Volk reported feeling better and had significantly less abdominal and pelvic pain. She was discharged after 11 days in the hospital. Volk continues to experience gastrointestinal issues and is unable to support a pregnancy.

In December 2010, Volk filed a complaint for medical malpractice against Dr. Bianchi, Dr. Keenan and Fallbrook Hospital. As to Dr. Bianchi, the complaint alleged that he perforated Volk's small intestine and left a suture in her cervix. Volk alleged that as a result of Dr. Bianchi's negligence, she suffered injuries, including cervical stenosis, abnormal uterine bleeding, pelvic pain, infertility, and gastrointestinal pain, and was forced to undergo a corrective procedure.

Dr. Bianchi moved for summary judgment. The motion was supported by an expert declaration from Dr. Martin W. Muth, a board certified obstetrician and gynecologist. Dr. Muth reviewed Volk's medical records and set forth a detailed summary of her treatment with Dr. Bianchi. Based on his education, training, experience, practice, and review of Volk's medical records, Dr. Muth opined that Dr. Bianchi complied with the standard of care for all care and treatment rendered to Volk. Dr. Muth explained that "Dr. Bianchi was careful during the [September 2009] procedure in an effort to avoid damage to the bowel" and "recognized there was a concern for possible perforation under the[] circumstances." Additionally, Dr. Muth stated, "a bowel perforation such as that suffered by [Volk] is a known risk of the procedures performed by Dr. Bianchi on September 8, 2009. Such perforations can

4

occur in the absence of negligence. The perforation suffered by [Volk] did in fact occur in the absence of any negligence on the part of Dr. Bianchi." Lastly, Dr. Muth opined that "to a reasonable degree of medical probability, no negligent act or omission on the part of Dr. Bianchi caused or contributed to the injuries alleged by [Volk] in the instant action."

In August 2011, the trial court issued a tentative ruling granting the motion because it was unopposed. The same day, Volk's counsel requested a continuance based on a calendaring error in his office. He requested a continuance of six to seven weeks because Volk's experts would need sufficient time to review voluminous medical records and prepare declarations refuting Dr. Muth's findings. Volk's counsel also set forth the matters on which Volk's expert would opine. The trial court continued the hearing to October 2011.

Volk opposed the summary judgment motion without a supporting expert declaration, arguing "the injuries caused by Dr. Bianchi's malpractice is reserved for ordinary lay persons." Three days before the summary judgment hearing, Volk requested another continuance. Volk argued that although "this case squarely fits within the common knowledge exception under medical malpractice," she was requesting a continuance to submit an expert declaration "should the court require expert testimony." The court denied Volk's request, noting the matter was previously continued to allow Volk to file an opposition and no request for a further continuance was in that opposition.

5

The trial court granted summary judgment, finding "there [was] no triable issue of fact whether [Dr. Bianchi] met the standard of care in the community and whether any alleged negligence on his part caused [Volk's] injuries pursuant to the declaration of [Dr.] Muth."  This appeal followed.

## DISCUSSION

### I. *Appellate Principles and Standard of Review*

"Any statement in a brief concerning matters in the appellate record—whether factual or procedural and no matter where in the brief the reference to the record occurs—*must be supported by a citation to the record*."  (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 9:36, p. 9–12; Cal. Rules of Court, rule 8.204(a)(1)(C).)  "'It is neither practical nor appropriate for us to comb the record on [the appellant's] behalf.'"  (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.)  The lack of record citations allows us to deem points raised as forfeited.  (Eisenberg, *supra*, ¶ 9:36, p. 9–12; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 798.)

Volk's opening brief does not contain any record citations.  Further, although she recognizes her error in her reply brief, she fails to correct the problem and urges us instead to consider the merits of her appeal.  Although we are hesitant to do so, we exercise our discretion to consider the points raised in Volk's appeal.

We review the trial court's decision granting summary judgment de novo (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*)), applying the

6

same three-step analysis required of the trial court. (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1431–1432.) After identifying the issues framed by the pleadings, we determine whether the moving party has established facts justifying judgment in its favor. If the moving party has carried its initial burden, we then decide whether the opposing party has demonstrated the existence of a triable issue of material fact. (*Id.* at p. 1432.) We must strictly construe the moving party's evidence and liberally construe the opposing party's evidence (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 838–839) and we may not weigh the evidence or conflicting inferences. (*Aguilar*, at p. 856; Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. (*Aguilar*, at p. 850.)

## II. *Necessity of Expert Testimony*

To prove a professional negligence claim, the plaintiff must establish the applicable standard of care and a breach of that standard. "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts' [citation], expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard prevailing of care' unless the negligence is obvious to a layperson." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.) Similarly, "[c]ausation must be proven within a reasonable medical probability based upon competent expert testimony." (*Dumas v. Cooney* (1991) 235 Cal.App.3d

7

1593, 1603; see also *Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402–404.)

"[T]he common knowledge exception applies if the medical facts are commonly susceptible of comprehension by a lay juror—that is, if the jury is capable of appreciating and evaluating the significance of a particular medical event." (*Gannon v. Elliot* (1993) 19 Cal.App.4th 1, 7.) The exception applies principally to "situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.' [Citation.]" (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001.) Common sense is sufficient to conclude medical negligence is present in some situations, including situations in which a simple injection results in complications, a surgical clamp is left in a patient's body, or a patient suffers a shoulder injury during an appendectomy. (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 141.)

The requirement of expert testimony applies in a summary judgment proceeding. (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 984–985.) A medical malpractice defendant who supports a summary judgment motion with applicable expert declarations "'is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.'" (*Id.* at p. 985.)

8

Here, Volk alleged Dr. Bianchi perforated her small intestine and left a suture in her cervix. She claimed that as a result of Dr. Bianchi's negligence, she suffered injuries, including cervical stenosis, abnormal uterine bleeding, pelvic pain, infertility, and gastrointestinal pain, and was forced to undergo a corrective procedure. These issues are beyond the common knowledge of a layperson and require expert testimony. Dr. Bianchi complied with his summary judgment burden by submitting the declaration of Dr. Muth, a board certified obstetrician and gynecologist, who opined that "all of the care and treatment rendered to . . . Volk by Dr. Bianchi was appropriate and within the standard of care" and to a reasonable degree of medical probability, no negligent act or omission on the part of Dr. Bianchi caused or contributed to Volk's injuries. Dr. Muth further explained the basis for his opinions.

Volk did not come forward with any expert testimony showing that treatment by Dr. Bianchi was negligent. Thus, Volk did not meet her summary judgment burden and the court properly granted the motion in favor of Dr. Bianchi.

### III. *Sufficiency of Expert Declaration*

Volk argues the trial court erred in granting summary judgment because Dr. Muth's declaration was deficient on numerous grounds. Specifically, Volk claims (1) Dr. Muth failed to set forth the bases for his opinions, (2) Dr. Muth was not qualified to provide expert testimony in this case because he did not practice in the same locality as Dr. Bianchi, (3) Dr. Muth did not establish whether he performed laparoscopic procedures and his familiarity with fibroid diagnoses, and (4) Dr. Muth

9

did not address Dr. Bianchi's negligence in failing to treat Volk's previously diagnosed fibroid.

Other than her argument concerning locality, Volk waived her arguments by failing to object below. (Code Civ. Proc., § 437c, subd. (b)(5) ["Evidentiary objections not made at the hearing shall be deemed waived."].) Although Volk submitted evidentiary objections to the trial court, those objections were largely boilerplate objections and were limited to objections concerning relevancy, hearsay, lack of personal knowledge, and failure to practice in the same locality. Accordingly, on appeal, we consider only the locality objection.

Volk contends Dr. Muth's declaration is deficient because he "currently practices in Long Beach, California" and "d[id] not demonstrate his knowledge of the practice of gynecology within the Fallbrook locality." We find this argument unavailing.

"[T]he standard of care for physicians is the reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of the medical profession *under similar circumstances*. [Citation.] The test for determining familiarity with the standard of care is knowledge of similar conditions. [Citation.] Geographical location may be a factor considered in making that determination, but, by itself, does not provide a practical basis for measuring similar circumstances. [Citations.]" (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 470.)

10

The curriculum vitae attached to Dr. Muth's declaration reveals that he had practiced obstetrics and gynecology in Southern California for more than 30 years, was board certified in that field in 1979, and served as an obstetrics and gynecology professor at two major universities in Southern California. Further, Dr. Muth stated that through his training, experience and practice, he was familiar with the type of care rendered by Dr. Bianchi to Volk. Dr. Muth's declaration established that he was generally familiar with the standard of care for obstetrics and gynecology and with treating cases similar to Volk's in Southern California. Volk fails to explain how the conditions or circumstances of her treatment in Fallbrook differ from those in Long Beach. Accordingly, we conclude the trial court acted well within its discretion in overruling Volk's locality objection.

## IV. *Denial of Continuance*

Volk argues the trial court erred by denying her request to continue the summary judgment hearing to allow her to submit an expert declaration.

The summary judgment statute provides the following: "If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion

11

is due."  (Code Civ. Proc., § 437c, subd. (h).)  The party seeking a continuance must submit an affidavit or declaration showing that "'(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts.'"  (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254.)

As a preliminary matter, we note that Volk repeatedly references her counsel's declaration in support of her *ex parte* request for a continuance in the trial court.  She asserts her counsel's declaration provided the bases for why a continuance was necessary.  However, Volk failed to include the declaration or any other *ex parte* papers in the record on appeal.  Thus, she has not provided us with a basis for review of her counsel's declaration.  Based on the record before us, we review the court's denial of Volk's continuance request for an abuse of discretion.  (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532.)

Dr. Bianchi filed his summary judgment motion in April 2011.  After failing to file an opposition, Volk requested a continuance from the court, stating her experts needed sufficient time to review voluminous medical records and prepare declarations refuting Dr. Muth's findings.  Accordingly, the trial court continued the hearing to October 2011.  Volk eventually opposed the summary judgment motion without a supporting expert declaration.  The opposition did not request a further continuance.  Rather, three days before the summary judgment hearing, Volk made an *ex parte* request for another continuance.  The court denied Volk's request, noting the matter

12

was previously continued to allow Volk to file an opposition and no request for a further continuance was in that opposition.  On this record, we cannot conclude the trial court abused its discretion in denying Volk's request for a continuance.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover costs on appeal.


McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.