Filed 3/13/15  Hernandez v. Dignity Health CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JOSE J. HERNANDEZ, | C074946 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201100272644CUMMSTK) |
| v. | |
| DIGNITY HEALTH, | |
| Defendant and Respondent. | |

The trial court granted a summary judgment to defendant Dignity Health, sued as St. Joseph's Medical Center, because plaintiff Jose J. Hernandez, an in pro. per. litigant, failed to offer any expert testimony to substantiate his vague claim that the hospital's negligence in treating him for chest pain caused the symptoms he experienced six months later and resulted in his permanent disability.[1]  On appeal, plaintiff attempts to enlarge

---

[1]  A party is entitled to act as his own attorney but is entitled to no greater consideration than other litigants or attorneys and is subject to the same restrictive procedural rules as an attorney.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247 (*Nwosu*); *Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 193.)

1

both the facts and his legal theories, neither of which he is allowed to do. We agree with the trial court that plaintiff's failure to present expert testimony to create a triable issue of material fact regarding causation is fatal to his lawsuit and therefore affirm the judgment. Because this issue alone is dispositive, we need not address either the standard of care or the notion that the hospital may be liable under a theory of res ipsa loquitur.

## PLEADING, MOTION, EVIDENCE, AND RULING

Plaintiff, a morbidly obese, diabetic smoker with hypertension, filed a medical malpractice lawsuit against the hospital and various doctors who treated him. He alleges a single cause of action for general negligence based on the following facts. On or about August 20, 2010, he was admitted to the hospital for "severe pain and uncontrollable shaking of the head." The hospital staff administered a series of tests, stabilized him, gave him some medication, and released him. He went home, fainted, and returned to the emergency room. He alleges that a doctor in the emergency room asked him if he was "trying to kill himself by taking all of the medication." He opines that because he is diabetic, he should have been monitored for a few hours after his medication was changed. He complained of weakness in his left side and some numbness. Once stable, he was again discharged. Again, he opines in his complaint, "An MRI conducted on a diabetic does not always show accurate results immediately should be conducted a second time between 24 and 48 hours which was not done, which was below the standard of care."

He further alleges that the pain persisted but he returned to work until February 4, 2011, when he was taken to St. Joseph's again, complaining of severe pain in his legs and that he had "back and neck issues." He was again given medication and discharged. Four days later he was taken to a different hospital. He alleges: "The doctors at Dameron [Hospital] sent him for an MRI and other tests which determined that he had suffered two strokes and that was why his left side was weak and numb." He concludes: "Plaintiff believes that because he was not diagnosed properly and did not receive the

2

appropriate care at St. Joseph's Hospital he is now permanently disabled, unable to work and has to use a walker or cane to get around."

The hospital moved for summary judgment and submitted the declaration of Joseph McCowin, M.D., a board certified internist with many years of experience working as an emergency physician. Dr. McCowin reviewed plaintiff's hospital records as he customarily does to evaluate the quality of care rendered to patients. He attests that the records he reviewed were sufficient and adequate to allow him to express the medical opinions that follow.

Prior to admission on August 22, 2010, plaintiff had tolerated a combination of medications with no adverse reaction to any of them, individually or in combination. He was admitted to the hospital for chest pain. Plaintiff underwent a cardiac catheterization while hospitalized, revealing only a 30 percent narrowing of the left anterior descending coronary artery. Dr. McCowin reported that anything less than 50 percent is insignificant and would not cause chest pain. He was discharged the next day with only one small change in his medication, made to avoid renal problems.

Once home, plaintiff fainted; he returned to the hospital the same day with "multiple vague symptoms including some numbness and weakness on the left side of his body which was evaluated with a normal MRI of the brain." Dr. McCowin disagreed with a statement made by one of the emergency room physicians that he suspected the drug Imdur had caused a drop in blood pressure. He explained that plaintiff had been on a minimal dose and had had no evidence of intolerance, such as low blood pressure, either before or during his admission on August 22. Moreover, the drug is a sustained-release medication that is not likely to cause an immediate drop in blood pressure unless the patient chews it. Plaintiff reported that he swallowed the pills. Even if plaintiff fainted as a result of the medications, Dr. McCowin opined that the ordering and administration of the medications was within the standard of care.

Dr. McCowin reported that plaintiff next appeared in the emergency room, complaining of lower back pain, on February 4, 2011. He had a history of back pain associated with mild degenerative disk disease. He was given additional medication and was discharged.

The doctor thus concluded: "It is my opinion, based on my education, training, experience and review of the records, that the care provided by the physicians, nurses, and staff at St. Joseph's was appropriate for the patient Jose Hernandez on both August 2010 admissions and the February 2011 emergency room encounter and met the applicable standard of care.

"Plaintiff's subsequently reported and described symptoms and disabilities, the explanation for which remains unclear, have no relation whatsoever to his care and treatment at St. Joseph's Medical Center in August 2010 or February 2011."

Plaintiff submitted three exhibits in opposition to the hospital's motion for summary judgment: a declaration by a friend of his sister who is a school nurse, unauthenticated hospital records, and copies of research he did on the Internet on topics such as strokes and standards of care. Defendant hospital objected to admission of the evidence.

The trial court found that the nurse's declaration raised a triable issue of material fact regarding the standard of care plaintiff received during his August trip to the emergency room, but plaintiff did not present evidence the hospital's care fell below the requisite standard of care when he returned on February 4, 2011. The court ruled, however, "Most critically, Plaintiff has not shown evidence of a causal connection between the negligent acts identified by Nurse Petricevich and any actual injury suffered by Plaintiff. That is, assuming negligence on the part of St. Joseph's, Plaintiff has not presented evidence that such negligence caused the injury of which he complains. In fact, Plaintiff has not established by admissible evidence what injury it was that he suffered (whether a stroke (or strokes) or something else) on or about February 8, 2011,

4

as alleged in his complaint." The court granted the hospital's motion for summary judgment.

Plaintiff appeals. As mentioned above, we will not consider any facts, allegations, or evidence offered for the first time on appeal. Nor will we consider plaintiff's new theory of res ipsa loquitur because he failed to raise it below.

## DISCUSSION

We need not reiterate at length the basic rules governing our review of a summary judgment of a medical negligence case as they are well known and not at issue here. Suffice it to say, because summary judgment is a drastic remedy depriving a litigant of a trial on the merits, a moving party must demonstrate there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (*Hernandez v. KWPH Enterprises* (2004) 116 Cal.App.4th 170, 174.) The trial court must liberally construe the opposing party's declarations, resolve all doubts in the light most favorable to the opposing party, and draw all reasonable inferences in the opposing party's favor. (*Ibid.*) Our review is de novo. (*Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 844.)

"The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 (*Johnson*).) To establish proximate causation, " '[T]he evidence must be sufficient to allow the jury to infer that in the absence of the defendant's negligence, there was a reasonable medical probability the plaintiff would have obtained a better result.' [Citation.]" (*Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1166 (*Jameson*).)

These are the generic principles applicable to the resolution of any summary judgment of a medical malpractice case. It is plaintiff's abject failure to abide by one specific requirement in a medical negligence case that is fatal to his lawsuit. The cases

5

abound, but the principle is simply stated. A plaintiff opposing a motion for summary judgment on a medical malpractice claim must present competent expert testimony that the defendant's delivery of medical services fell below the standard of care and the breach of the duty of care proximately caused the injury. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 957-958; *Jameson*, *supra*, 215 Cal.App.4th at pp. 1166-1167; *Johnson*, *supra*, 143 Cal.App.4th at p. 305.)

" 'California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.' [Citation.]" (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 984-985 (*Munro*).) More recently, this court put the plaintiff's burden this way. "[W]here the conduct required of a medical professional is not within the common knowledge of laymen, a plaintiff must present expert witness testimony to prove a breach of the standard of care. [Citations.] Plaintiff also must show that defendants' breach of the standard of care was the cause, within a reasonable medical probability, of his injury." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 509.)

Plaintiff relies on the medical testimony of a school nurse, a friend of plaintiff's sister. The nurse catalogues a list of charting errors as well as missteps in the administration of plaintiff's medications. The trial court found that her declaration created a triable issue of fact regarding the hospital's breach of the standard of care. But the court granted the summary judgment because the nurse did not offer competent medical testimony that any of the alleged missteps caused, within a reasonable medical probability, any of plaintiff's ill-defined injuries. We examine the sufficiency of the declaration, therefore, to create a triable issue that the hospital's negligence caused injury to plaintiff.

There is a glaring deficiency undercutting anything the nurse hypothesizes about causation. She muses about the propriety of administering medications to plaintiff, a diabetic, and takes sides between some alleged discrepancies between the cardiologist and the neurologist and oncologist. She writes: "Reliance on the verbal opinion of the cardiologist that the left sided weakness was not a stroke over the neurologist and oncologist who both documented that the likely etiology of the left sided weakness was stroke. A later formal cardiologist report does not rule out stroke as the cause of the left sided weakness." But she then concedes, "While these issues for the most part are common sense they are partially or out of my scope of my expertise."

An expert cannot speculate on areas outside the scope of her expertise. While the nurse might have been competent to evaluate the propriety of how the nurses charted, she certainly exceeded her expertise when opining on the complex calculations the various specialists made in treating an obese diabetic patient who visited emergency rooms with some frequency for a variety of complaints ranging from chest pain, to neck pain, to leg pain, to dizziness, and other assorted aches and pains. Indeed, she expressly acknowledged she had overstepped the boundaries of her own expertise. Her declaration therefore provides no expert evidentiary support for the notion that the charting and medication errors she identifies caused plaintiff to have a stroke or any other injury.

In his complaint and briefing on appeal, plaintiff offers various medical opinions as if he is an expert. As defendant hospital points out, plaintiff is not a physician, and his opinions and observations were not presented to the trial court in a declaration. We therefore must disregard his allegations and conclusions. (*Taylor v. California State Auto. Assn. Inter-Ins. Bureau* (1987) 194 Cal.App.3d 1214, 1223.)

In his complaint, plaintiff alleges that the doctors at another hospital subsequently administered an MRI and determined he had suffered a stroke. Conspicuously missing from plaintiff's opposition to the motion for summary judgment, however, is any testimony or documentation from this hospital or the doctors who treated him. Simply

7

put, plaintiff offers no competent medical testimony as needed to avoid summary judgment in a medical malpractice case that anything the staff at St. Joseph's Hospital did, or did not do, caused, to a reasonable medical probability, any of the injuries he claims to have suffered.

In addition to the nurse's declaration, plaintiff also submitted hospital records and an amalgamation of materials he found on the Internet. Defendants, with good reason, vehemently object to the admissibility of both exhibits, as they did in the trial court, and argue that the trial court abused its discretion by failing to sustain their objections. As mentioned above, a litigant who chooses to represent himself is subject to the same rules of evidence as an attorney. (*Nwosu*, *supra*, 122 Cal.App.4th at pp. 1246-1247.) Hospital records must be authenticated to be admissible. (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 742-743.) Plaintiff fails to present the requisite authentication.

Nor are random facts, reports, or articles downloaded from the Internet admissible without laying a proper foundation. Plaintiff provides nothing but the raw copies of materials he found combing the Internet. "[A]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules . . . ." (*St. Clair v. Johnny's Oyster & Shrimp, Inc.* (S.D.Tex. 1999) 76 F.Supp.2d 773, 775.) "Furthermore, even website evidence admissible under a hearsay exception requires authentication." (*Southco, Inc. v. Fivetech Tech. Inc.* (E.D.Pa. 2013) 982 F.Supp.2d 507, 515; see *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson* (M.D.Fla. May 12, 2006, No. 8:06-cv-223-T-MSS) 2006 U.S.Dist. Lexis 28873 at p. *5, quoting *In re Homestore.com, Inc. Sec. Litig.* (C.D.Cal. 2004) 347 F.Supp.2d 769, 782) ("To authenticate printouts from a website, the party proffering the evidence must produce 'some statement or affidavit from someone with knowledge [of the website] . . . for example [a] web master or someone else with personal knowledge would be sufficient.' "); see also *Wady v. Provident Life & Accident Ins. Co. of Am.* (C.D.Cal. 2002) 216 F.Supp.2d 1060, 1064-1065.) While neither exhibit, even if

8

admissible, provided the necessary expert testimony to substantiate plaintiff's amorphous theory of causation, they must be disregarded for violating the most basic evidentiary rules for admissibility.

In a belated and last-ditch effort to save his lawsuit, plaintiff asserts he can overcome his failure to produce expert testimony on causation by invoking the doctrine of res ipsa loquitur, a theory that has been successfully employed in medical malpractice cases. (See., e.g., *McKinney v. Nash* (1981) 120 Cal.App.3d 428, 435-440; *Contreras v. St. Luke's Hospital* (1978) 78 Cal.App.3d 919, 930.) He failed, however, to raise this theory in the trial court. " 'Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments. [Citation.] An argument or theory will generally not be considered if it is raised for the first time on appeal. [Citation.] Specifically, in reviewing a summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.] Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal.' [Citation.]" (*Munro*, *supra*, 215 Cal.App.3d at p. 985.)

This rule, "which forbids raising a new issue for the first time on appeal takes on added significance in summary judgment proceedings because '[t]he moving party's burden on a motion for summary judgment is only to "negate the existence of triable issues of fact in a fashion that [entitles] it to judgment on the issues raised by the pleadings. [Citation.] It [is] not required to refute liability on some theoretical possibility not included in the pleadings." [Citation].' [Citation.] Accordingly, it would be unfair to a party who successfully moved for summary judgment to permit the opposing party on appeal to raise a new theory not included in the pleadings." (*Munro*, *supra*, 215 Cal.App.3d at p. 989.)

In short, plaintiff failed to appreciate the evidentiary burden he bore before the trial court. That is to say, he failed to provide expert testimony that any negligence

committed by the hospital caused him injury to controvert the hospital's expert's conclusion that "Plaintiff's subsequently reported and described symptoms and disabilities, the explanation for which remains unclear, have no relation whatsoever to his care and treatment at St. Joseph's Medical Center in August 2010 or February 2011." In the absence of an expert's declaration creating a triable issue as to causation, defendant hospital was entitled to summary judgment.

## DISPOSITION

The judgment is affirmed.


          RAYE          , P. J.


We concur:


       BLEASE       , J.


       HULL        , J.

10